IN THE UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

MIAMI DIVISION

CASE NO:

CANYON CAPITAL VI, LLC,
a Florida Limited Liability Company,

       Plaintiff,

vs.

ROBERT THOMAS GRGEK
d/b/a American Yacht & Customs,
ERICK GILES, a Florida Resident,
JODI GOLDMAN, a Florida Resident, and
EXTREME MARINE, INC.
a Florida Corporation,

       Defendants.
_____/

## **VERIFIED COMPLAINT**

Plaintiff, CANYON CAPITAL VI, LLC, by and through its undersigned counsel and pursuant to the applicable Federal Rules of Civil Procedure, hereby files this Verified Complaint against Defendants, ROBERT THOMAS GRGEK d/b/a American Yacht & Customs, ERICK GILES, JODI GOLDMAN, and EXTREME MARINE, INC., and alleges as follows:

### **Nature of Action**

1.    Plaintiff is the owner of Vessel that was involved in a collision. Knowing that Plaintiff was eager to have the Vessel repaired, Defendants held themselves out as having extensive expertise and experience in complicated fiberglass repairs and reassured Plaintiff that they could repair the Vessel in a short time frame.

2.     Based on Defendants' representations, Plaintiff paid Defendants a deposit in the amount of $104,370.29 and expected Defendants to repair the Vessel within the ninety-days promised.

3.     Unfortunately, Defendants never intended to perform. It has subsequently been determined that Defendants collectively engaged in a sophisticated scheme to defraud Plaintiff by making false representations of material facts; providing fraudulent and misleading photographs; providing non-independent references and links to a website with additional false information.

4.     Accordingly, Plaintiff brings this action to recover its deposit, lost revenue, and out of pocket expenses resulting from Defendants fraud, breach of contract and other misconduct.

**<u>Parties, Jurisdiction and Venue</u>**

5.      Plaintiff, CANYON CAPITAL VI, LLC ("CANYON CAPITAL"), is a Florida Limited Liability Company and maintained a principal place of business in Miami-Dade County

6.     CANYON CAPITAL is comprised of two members, who are domiciled in Puerto Rico and New York.

7.     Defendant, ROBERT THOMAS GRGEK ("GRGEK"), upon information and belief, is an individual domiciled in Florida and is a citizen of the United States.

8.     GRGEK is the registered owner of the expired fictious entity known as "American Yacht and Customs" as well as the active fictious entity "American Yacht & Custom" ("AYC").

9.     GRGEK regularly and systematically conducts business in the Southern District of Florida, including Miami-Dade and Broward County.

10.     Defendant, EXTREME MARINE INC. ("EXTREME MARINE"), upon information and belief, is a Florida Corporation with a principal place of business in Miami-Dade County.

11.     Defendant, JODI GOLDMAN ("GOLDMAN"), is an individual domiciled in Florida.

12.     Upon information and belief, GOLDMAN was at all times material the President of EXTREME MARINE and was also working as an agent and/or subcontractor of AYC at all times material.

13.     Defendant, ERIK GILES ("GILES"), is an individual domiciled in Florida.

14.     Upon information and belief, GILES was at all times material an employee of EXTREME MARINE and was also working as an agent and/or subcontractor of AYC at all times material.

15.     The Court has jurisdiction over this action pursuant to 28 U.S.C. § 1332 because Plaintiff and Defendants are citizens of different States, and the amount in controversy exceeds $75,000.00.

16.     This Complaint also asserts one (1) cause of action (Count I) within this Honorable Court's Admiralty and Maritime Jurisdiction pursuant 28 U.S.C. § 1333.

17.     Venue is proper in the Southern District of Florida because the vessel at issue is located in Broward County, Florida; the below described repairs and work were to take place in Miami-Dade County, Florida; and Defendant's misrepresentations were made to representatives of Plaintiff while in Miami-Dade County, Florida.

**<u>Facts</u>**

A.  ***Defendant's Scheme to Fraudulently Induce Plaintiff Begins***

18.     At all times material, Plaintiff, CANYON CAPITAL, is and was the documented owner of the motor vessel, SERENITY – one 2016 37' 370 Outrage, Boston Whaler bearing Hull Identification No. BWCE1769B616 and Official No. 1273959 ("Vessel").

19. On January 15, 2022, the Vessel was involved in a collision and sustained extensive fiberglass damage.

20. On January 15, 2022, after observing the extensive damage to the Vessel, GILES encouraged CANYON CAPITAL to have the repairs completed by Defendant GRGEK.

21. Later that same day, Defendant GRGEK contacted CANYON CAPITAL in an attempt to solicit work as the repair facility.

22. GRGEK represented to Plaintiff that he was an experienced fiberglass repairman and that AYC was a "premier repair facility." *See* Text Messages, Exhibit "A."

23. Unable to find any information about AYC or GRGEK online, Plaintiff began questioning GRGEK about his ability to repair a half a million-dollar boat despite having no online presence or reviews.

24. Over the next several days, to assuage Plaintiff's concerns, GRGEK made numerous misrepresentations to Plaintiff about his capabilities, experience and reputation as a fiberglass repairman, including, but not limited to:

  i. AYC was a premier repair facility in Florida that handles large structural impacts and paint repairs;

  ii. AYC had extensive experience repairing vessels manufactured by Boston Whaler;

  iii. Defendant's customers included other highly reputable marinas, boat dealers and vessel manufacturers; and

  iv. Repairs to the Vessel would be completed within 90 days.

25.     GRGEK also led Plaintiff to believe that:

a.  Defendant owned a marine travel lift depicted in photographs texted to

Plaintiff;

b.  Repairs to the Vessel would be conducted at an indoor repair facility

similar to the facility depicted in photographs texted to Plaintiff;

c.  That no other repair facility could properly fix this type of complicated

repair in south Florida; and

d.  Other repair facilities subcontract the work out to him when they have

tough repairs like this.

26.     GRGEK also represented to Plaintiff that he had extensive experience dealing with

marine   insurance   claims   and   even   directed   Plaintiff   to   his   purported   website,

https://marineinsuranceclaim.com which included a non-working number *"+1 212-683-9756"*, an

address that has no association with GRGEK or AYC *"350 Fifth Avenue, 34th floor New York, NY*

*10118-3299 USA,"* (The EMPIRE STATE BUILDING), and no mention of AYC anywhere on

the website.

27.     When Plaintiff questioned GRGEK about the website on January 17, 2022, he

claimed "we just hired a marketing company to revamp the website."

28.     To further assuage Plaintiff's concerns, GRGEK provided Plaintiff with several

references that, unbeknownst to Plaintiff at the time, all turned out to be friends of GRGEK's for

multiple years that were in the boat business and were not actual end customers.

29.     Upon information and belief, GILES, GOLDMAN and EXTREME MARINE

received 10% of the repair cost in an undisclosed kickback for any referral they make to GRGEK.

30.     On or about January 17, 2022, GILES called Plaintiff and vouched for GRGEK, touting his work.

31.     GILES represented that he has worked with GRGEK for over 4 years, and that he currently has "4 of his customers'" boats with GRGEK.

32.     GILES further represented that GRGEK has repaired "over 40" of his customers' boats over that 4-year period, all without any issues.

33.     Upon information and belief, GILES made those representations to induce Plaintiff into agreeing to have GRGEK make the repairs and to ensure GILES would receive his undisclosed kickback.

34.     Later, GOLDMAN made similar representations to Plaintiff that, upon information and belief, were made to induce Plaintiff into a contract with GRGEK so she would be paid a kickback.

35.      GOLDMAN specifically vouched for GRGEK's work and represented that EXTREME MARINE has worked with GRGEK for "over 4 years" and that he has repaired "around 40 to 50" of her customers' boats, all without issue.

36.     While unknown to Plaintiff at the time, GILES and GOLDMAN knew their representations were false.

37.     Upon information and belief, GRGEK has not repaired 40 to 50 of their customers' boats and there were in fact customers with issues.

38.     On or about January 19, 2022, GILES called CANYON CAPITAL to again pressure Plaintiff to enter into an agreement with GRGEK.

39.     With no way to verify the representations made by the Defendants, Plaintiff relied on these false statements and contracted with GRGEK to repair the damage to the Vessel.

40.    The initial scope of work was set forth in AYC Estimate No. 79 in which GRGEK estimated the repairs would cost $143,417.84. *See* AYC Estimate #79, <u>Exhibit "B."</u>

41.    When the contract was entered into, the Vessel was located in Miami-Dade County, Florida, and CANYON CAPITAL understood and expected that the repairs were to be completed by GRGEK in South Florida.

42.    On or about February 2, 2022, GRGEK and American Yacht & Customs obtained possession of the Vessel to "begin repairs."

43.    Shortly thereafter, GRGEK transported the Vessel from South Florida to Cocoa, Florida without the knowledge of CANYON CAPITAL.

44.    Upon information and belief, GRGEK transported the Vessel to Cocoa, Florida (3 hours away) to (a) make it challenging for Plaintiff to view progress on the work purportedly being completed and (b) so that Plaintiff would not see the repair facility, both in furtherance of the fraudulent scheme.

45.    While unknown to Plaintiff at the time, the "premier" repair facility in Cocoa, Florida turned out to be nothing more than a field (not even owned by GRGEK or AYC) littered with derelict boats that lacked the controlled weather environment needed to conduct extensive fiberglass work.

  

46.     On or about February 4, 2022, GRGEK advised the Plaintiff that more damage was discovered to the Vessel so the scope of work would need to be increased. GRGEK then provided AYC Estimate No. 83 which included an additional $25,378.69 in repair costs. *See* AYC Estimate No. 83, Exhibit "C."

47.     A couple weeks later, on or about February 17, 2022, GRGEK provided a third estimate – AYC Estimate No. 87 – which claimed that more damage was discovered and would cost another $16,739.14 to repair. *See* AYC Estimate No. 87, Exhibit "D."

48.     On or about February 24, 2022, GRGEK represented to Plaintiff that repairs were well underway but advised that work would be suspended unless Plaintiff immediately wired payment in the amount of $64,211.95. Said amount represented 50% of the labor and 100% of the parts of AYC Estimate #79.

49.     Based on GRGEK's threat of stopping the work, on or about March 2, 2022, CANYON CAPITAL wired $64,211.95 to Defendant.

**B.** *Defendants Fail to Perform & Attempts to Extract More Money from Plaintiff*

50.     Days after receiving the wire of $64,211.95, GRGEK demanded more money from Plaintiff.

51.     Despite previously agreeing to a deposit of 50% of the labor and 100% of the parts on the two additional estimates, GRGEK now demanded that Estimate Nos. 83 & 87 be paid in full upfront stating "Because supplements stop our entire operation, we asked them to be paid in full as they're approved. I cannot bend on this one."

52.     Plaintiff pushed back on GRGEK'S unilateral attempt to change the terms of the contract in the middle of the job and refused to pay any more money to Defendant GRGEK without first seeing more work completed.

53.     In furtherance of Defendants scheme to extract additional money from Plaintiff, GRGEK told Plaintiff, "Unfortunately I'm at an impasse" and that he would send an invoice for the work done so far and "we're gonna have to part ways."

54.     Later, in a telephone conversation between GRGEK and CANYON CAPITAL, in order to alleviate Plaintiff's concerns that no further work was completed on the Vessel and with the goal of inducing Plaintiff to send more money, GRGEK falsely represented that he took a mold from another 37-foot Boston Whaler boat which would "save a lot of time" for repairs.

55.     Plaintiff repeatedly asked for pictures of the purported mold, but GRGEK could not provide same and claimed he could not pick up the mold because his trailer was being repaired.

56.     Upon information and belief, GRGEK was well-aware of the leverage he held over Plaintiff having the Vessel over 3 hours away when he sought to extract more money from CANYON CAPITAL even though he never intended to complete the repairs.

57.     On February 24, 2022, GRGEK sent Plaintiff an email letting them know that $46,777.48 (over 70% of the deposit) would be retained if they chose to remove the Vessel despite not doing anything more than exploratory work.

58.     Later, GILES called Plaintiff and represented that he saw GRGEK take a mold from his customer's boat and pressed Plaintiff to send more money to GRGEK.

59.     GILES knew that this representation was false and was made, upon information and belief, so he would obtain more of a kickback triggered by Plaintiff sending more money to GRGEK.

60.     Rather than lose over 70% of the deposit money already paid to GRGEK, and in the hope of getting the Vessel promptly repaired, Plaintiff reluctantly sent additional funds to GRGEK (to pay the additional AYC Estimate Nos. 83 and 87 in full) based on the false representations of GRGEK, GILES and GOLDMAN.

61.     On March 7, 2022, CANYON CAPITAL sent GRGEK a wire for $23,378.69.

62.     On March 17, 2022, CANYON CAPITAL sent GRGEK another wire for $16,739.14.

63.     In total, CANYON CAPITAL paid GRGEK $104,329.78 based on the representations and demands of the Defendants.

64.     On April 7, 2022, GRGEK demands even more money from Plaintiff, despite having the Vessel for over 90 days without doing any more than exploratory work and now having over $104,000 of Plaintiff's money.

65.     This time, GRGEK demanded another payment of $82,380.87 (the entire remaining balance due to complete the job) before any further work would be done under the guise of needing "security."

66.     GRGEK falsely explained that he cannot prefect a security interest (and therefore had no guarantee that he will get paid at the end of the job) because there is a loan on the Vessel registered with the United States Coast Guard.

67.     At this point it became clear to Plaintiff that GRGEK never intended to perform any of the repairs and that Plaintiff was the victim of a sophisticated fraudulent scheme masterminded by GRGEK with the assistance of the other Defendants.

68.     Indeed, despite the representations of GILES and GOLDMAN, GRGEK had not done any additional work, had not ordered any parts, had not taken a mold from another boat and had no intention of ever doing so.

69.     Rather, Defendants intended to profit by retaining Plaintiff's deposit, with GILES, GOLDMAN and EXTREME MARINE receiving their 10% kickback from GRGEK, without ever providing any benefit or service to Plaintiff.

70.     After Plaintiff refused to give in to GRGEK's fraudulent attempt to extract even more money, on April 12, 2022, GRGEK informed Plaintiff via a text message that in order to release the Vessel, Canyon Capital would have to sign a release agreeing that $82,380.87 of work was completed.

71.     In other words, GRGEK was claiming that the value of the work completed now miraculously increased from $46,777.48 to $82,380.87, despite the fact that no additional work was completed on the Vessel.  Thus, despite not doing anything other than "exploratory" work, Plaintiff would have to agree to allow the Defendants to abscond with almost 80% of their deposit in order for Grgek to release its Vessel.

72.     It has subsequently been determined that GRGEK made numerous materially false and fraudulent statements relative to his ability to timely complete the requested repairs.

73.     Upon information and belief, GILES and GOLDMAN were working with GRGEK from the start and intentionally participated in and provided substantial assistance to GRGEK's fraudulent scheme.

74.     Upon information and belief, GILES, GOLDMAN and EXTREME MARINE received 10% of the $104,329.78 paid to GRGEK by Plaintiff.

75.     On May 4, 2022, GRGEK attempted to support his demand for more money by sending CANYON CAPITAL a picture of a faded mold and represented that he just took it off a loaner 370 Outrage for repairs of the subject Vessel. This was determined to be false.

76.     Plaintiff subsequently learned that the mold in the photograph sent by GRGEK was not taken from a 370 Outrage and therefore could not have been used to repair the subject Vessel.

77.     Instead, the mold in the photograph was from an entirely different boat that GRGEK sent in furtherance of his scheme by attempting to take advantage of Plaintiff's lack of knowledge in boat building.

78.     In fact, the mold in the photograph was sun-bleached and therefore most likely taken from a boat years ago and had no deck texture as it would have if taken off a 370 Outrage.

79.     The mold texted to Plaintiff by GRGEK purportedly taken from a loaner 370 Outrage is show in the photograph on the *left* and the mold subsequently taken from a loaner 370 Outrage by the new repair facility is depicted in the photograph on the *right*:

 

**C.  *Plaintiff Terminates the Contract and Demands the Return of Vessel & Monies Paid***

80.     Throughout May 2022, CANYON CAPITAL made repeated demands for the return of the Vessel and the $104,329.78 paid.

81.     After several weeks of repeated demands and threats of litigation, on May 23, 2022, GRGEK finally agreed to release the Vessel to Plaintiff.

82.     Upon its return and inspection, the Plaintiff noticed several items worth just under Twelve Thousand Dollars ($12,000.00) that were not returned with the Vessel, including, but not limited to: the bow anchor; the speaker box with the speaker and led light; stainless anchor chain with swivel and anchor rode; a stainless through-hull fitting; the bow rail that was cut off the vessel; and the drain plug.

83.     Moreover, GRGEK neglected the Vessel and left it exposed to the elements which caused additional damage including the fading of the fiberglass, the cushions, and the cockpit table; the batteries were completely dead; and the inner hull was waterlogged.

84.     On May 24, 2022, an expert marine surveyor inspected the Vessel and it was readily apparent that the GRGEK did nothing more than superficial "exploratory" work, despite having the Vessel in his custody and control for almost four (4) months.

85.     Upon information and belief, GRGEK never intended to complete the repairs outlined in the AYC Estimates and only conducted "exploratory" work to justify the increased estimates and requests for additional money.

86.     In fact, GRGEK, with the assistance of the other Defendants, working as his agents, made material misrepresentations or omissions in order to execute a sophisticated scheme to defraud CANYON CAPITAL.

87.     CANYON CAPITAL has made repeated demands for the return of the monies advanced to GRGEK for work that was not complete.

88.     CANYON CAPITAL also made repeated demands for the items that were not returned with the Vessel and for the parts that Plaintiff paid for which were purportedly ordered by GRGEK.

89.     To date, GRGEK has refused to return any money nor provide Plaintiff with any parts purportedly ordered.

90.     Further, GRGEK has refused to allow Plaintiff to pick up the items that were not returned with the Vessel.

91.     All conditions precedent to bringing this action have been meet and/or waived.

<u>**COUNT I**</u>
<u>**BREACH OF MARITIME CONTRACT TO REPAIR VESSEL AGAINST GRGEK**</u>

Plaintiff adopts and incorporates paragraph numbers 1 through 91 as if fully set forth herein and further alleges:

92.     CANYON CAPITAL brings this cause of action under the General Maritime Law against GRGEK for breaching the contract to repair the Vessel.

93.     In or about February 2022, Plaintiff hired GRGEK to complete extensive repairs to the Vessel.

94.     Mr. Grgek represented to Plaintiff and the general public that that he is an experienced fiberglass repairman and "premier repair facility."

95.     GRGEK made numerous representations to Plaintiff about his capabilities and experience as a fiberglass repairman, including, but not limited to:

      i.     AYC was a premier repair facility in Florida that handles large structural impacts and paint repairs. *See* Text Messages, <u>Exhibit "A"</u>;

      ii.     AYC had extensive experience repairing vessels manufactured by Boston Whaler;

iii.  Defendant's customers included other highly reputable marinas, boat dealers and vessel manufacturers; and

iv.  Repairs to the Vessel would be completed within 90 days.

96.   Based on these misrepresentations, and the representation of the other Defendants outlined above, CANYON CAPITAL contracted with GRGEK and American Yacht & Customs to repair the damage to the Vessel.

97.   The initial scope of work was set forth in AYC Estimate No. 79 and estimated the repairs would cost $143,417.84. *See* AYC Estimate #79, <u>Exhibit "B."</u>

98.   The cost of work and cost of repair was subsequently increased pursuant to AYC Estimate Nos. 83 & 87. *See* <u>Exhibits "C" & "D."</u>

99.   In sum, GRGEK agreed to complete extensive repairs to the Vessel for the total price of $185,535.67. *See* AYC Estimate Nos. 79, 83 & 87.

100.  Of that amount, CANYON CAPITAL paid $104,329.78 based on GRGEK's representations and requests for deposits.  Said amount was to be allocated as follows:

i.   $64,211.95 – AYC Estimate No. 79 (50% Labor + 100% Parts).

ii.  $23,378.69 – AYC Estimate No. 83 (100% - Paid in Full).

iii. $16,739.14 – AYC Estimate No. 87 (100% - Paid in Full).

101.  Regrettably, GRGEK failed to perform the contracted work and breached the foregoing agreement by not completing the contracted services with reasonable skill, diligence or in accordance with industry standards.

102.  In fact, GRGEK did nothing more than superficial "exploratory" work, despite being paid $104,329.78 and having the Vessel for over four (4) months.

103.    As a direct consequence of GRGEK's breach, CANYON CAPITAL has suffered damages in excess of $300,000.00, which includes, but is not limited to:

     i.     The cost of repairing the Vessel which has been estimated by Foster's Yacht Services to be at least $175,000.00;

     ii.     Survey and transport expenses;

     iii.     Storage while the Vessel is disabled and undergoing repairs; expected to be at least $10,000;

     iv.     Loss of use damages stemming from the inability to charter the vessel during the increased period of repair estimated to be over $35,000;

     v.     Replacement and/or remanufacturing of parts not returned by GRGEK estimated to cost over $11,800;

     vi.     Additional repairs and parts needed to repair damage caused by neglect and exposure to the elements, estimated to cost around $15,000; and

     vii.     Other incidental and consequential damages.

WHEREFORE, Plaintiff, CANYON CAPITAL VI, LLC, respectfully requests that this Honorable Court enter judgment against Defendant, ROBERT THOMAS GRGEK, and award compensatory damages, consequential damages, incidental damages, costs, prejudgment interest, and other relief as this Court deems just and proper.

## COUNT II
## FRAUDULENT INDUCEMENT AGAINST ALL DEFENDANTS

Plaintiff adopts and incorporates paragraph numbers 1 through 91 as if fully set forth herein and further alleges:

104.    As set forth above, Defendants fraudulently induced Plaintiff to enter into the Agreement by making materially false and misleading representations and omitting material information within Defendants' knowledge.

105.    Prior to entering into the Agreements, Defendants did not intend to perform.

106.    Defendants had actual knowledge of the materially false and misleading representations and omissions in their communications with Plaintiff; or, in the alternative, Defendants had a reckless disregard of the materially false and misleading representations and omissions contained therein.

107.    Defendants were aware that Plaintiff would rely upon Defendants' representations in determining to enter into the contract with AYC.

108.    Plaintiff relied on Defendants' misrepresentations in deciding to enter the contract with AYC.

109.    Plaintiff was unaware of and could not have discovered through the exercise of reasonable diligence, Defendants' materially false and misleading representations and omissions.

110.    As a direct and proximate result of Defendants' fraud, Plaintiff has suffered foreseeable damages in excess of $300,000.00 which includes, but is not limited to:

     i.    The cost of repairing the Vessel which has been estimated by Foster's Yacht Services to be at least $175,000.00;

     ii.    Survey and transport expenses;

     iii.    Storage while the Vessel is disabled and undergoing repairs; expected to be at least $10,000

     iv.    Loss of use damages stemming from the inability to charter the vessel during the increased period of repair estimated to be over $35,000;

     v.    Replacement and/or remanufacturing of parts not returned by GRGEK estimated to cost over $11,800;

     vi.    Additional repairs and parts needed to repair damage caused by neglect and exposure to the elements, estimated to cost around $15,000; and

     vii.    Other incidental and consequential damages.

WHEREFORE, Plaintiff, CANYON CAPITAL VI, LLC, respectfully requests that this Honorable Court enter judgment against Defendants, ROBERT THOMAS GRGEK, ERICK GILES, JODI GOLDMAN, and EXTREME MARINE INC., and award compensatory damages, consequential damages, incidental damages, costs, prejudgment interest, and other relief as this Court deems just and proper.

### COUNT III
### AIDING AND ABETTING FRAUD AGAINST
### GILES, GOLDMAN & EXTREME
(Plead in the Alternative)

Plaintiff adopts and incorporates paragraph numbers 1 through 91 as if fully set forth herein and further alleges:

111.    Plaintiff brings this cause of action for aiding and abetting fraud against GILES, GOLDMAN, and EXTREME MARINE as an alternative basis for relief in the event the trial of fact finds that these Defendants did not directly defraud Plaintiff.

112.    As set forth above, GILES, GOLDMAN, and EXTREME MARINE knowingly participated in the fraud perpetrated by GRGEK and provided substantial assistance by knowingly making false and fraudulent representations.

113.    As also set forth above, GILES, GOLDMAN, and EXTREME MARINE had actual knowledge of GRGEK's fraudulent scheme and directly supported the fraud so they would receive a kickback/commission from monies paid by Plaintiff to GRGEK.

114.    As a direct and proximate result of GILES, GOLDMAN, and EXTREME's misconduct, Plaintiff has suffered foreseeable damages in excess of $300,000.00 which includes, but is not limited to:

> i.    The cost of repairing the Vessel which has been estimated by Foster's Yacht Services to be at least $175,000.00;

    ii.    Survey and transport expenses;

    iii.    Storage while the Vessel is disabled and undergoing repairs; expected to be at least $10,000

    iv.    Loss of use damages stemming from the inability to charter the vessel during the increased period of repair estimated to be over $35,000;

    v.    Replacement and/or remanufacturing of parts not returned by GRGEK estimated to cost over $11,800;

    vi.    Additional repairs and parts needed to repair damage caused by neglect and exposure to the elements, estimated to cost around $15,000; and

    vii.    Other incident and consequential damages.

WHEREFORE, Plaintiff, CANYON CAPITAL VI, LLC, respectfully requests that this Honorable Court enter judgment against Defendants, ERICK GILES, JODI GOLDMAN, and EXTREME MARINE INC., and award compensatory damages, consequential damages, incidental damages, costs, prejudgment interest, and other relief as this Court deems just and proper. Attorneys' fees

<u>**COUNT IV**</u>
<u>**NEGLIGENCE MISREPRESENTATION AGAINST GRGEK**</u>
(Pled in the Alternative)

Plaintiff adopts and incorporates paragraph numbers 1 through 91 as if fully set forth herein and further alleges:

92.    CANYON CAPITAL brings this cause of action against GRGEK based on the false and misleading representations of material fact which induced Plaintiff to hire Defendant GRGEK for the repairs to the Vessel and pay over $104,000 to Defendant.

93.    On or about January 15, 2022, the Vessel was damaged and needed extensive fiberglass repairs.

94.    Later that same day, Defendant GRGEK contacted CANYON CAPITAL, in an attempt to solicit work as the repair facility.

95.     In or about early February 2022, GRGEK made numerous representations to Plaintiff about his capabilities and experience as a fiberglass repairman, including, but not limited to:

    i.   AYC was a premier repair facility in Florida that handles large structural impacts and paint repairs. *See* Text Messages, Exhibit "A";

    ii.   AYC had extensive experience repairing vessels manufactured by Boston Whaler;

    iii.   Defendant's customers included other highly reputable marinas, boat dealers and vessel manufacturers; and

    iv.   Repairs to the Vessel would be completed within 90 days.

96.     GRGEK also led Plaintiff to believe that:

    a.  Defendant owned a marine travel lift depicted in photographs texted to Plaintiff;

    b. Repairs to the Vessel would be conducted at an indoor repair facility similar to the facility depicted in photographs texted to Plaintiff;

    c. That no other repair facility could properly fix this type of complicated repair in south Florida; and

    d. Other repair facilities subcontract the work out to him when they have tough repairs like this.

97.     GRGEK provided Plaintiff with three estimates – AYC Estimate Nos. 79, 83 & 87 – which purportedly outlined the repairs and work to be completed by Defendant GRGEK.

98.     The aforementioned representations were material to Plaintiff's decision to contract with GRGEK for the repairs of the Vessel.

99.     GRGEK was negligent in making such representations to Plaintiff because, upon information and belief, GRGEK knew, or should have known, that the aforementioned representations were false.

100.    GRGEK made the misrepresentations to induce the Plaintiff into an agreement and to elicit money from the Plaintiff.

101.    Moreover, GRGEK had no intention of honoring the representations and/or never intended to complete the repairs outlined in the AYC Estimates.

102.    CANYON CAPITAL reasonably relied on the false representations to its determent and would not have hired GRGEK to repair the Vessel but for Defendant GRGEK's misrepresentations and false promises.

103.    Moreover, CANYON CAPITAL would not have paid GRGEK $104,329.78 if it were not for the Defendant's misrepresentations and false promises.

104.    CANYON CAPITAL has been severely and significantly damaged as a direct result of the Defendant GRGEK's false and fraudulent representations.

WHEREFORE, Plaintiff, CANYON CAPITAL VI, LLC, respectfully requests that this Honorable Court enter judgment against Defendant, ROBERT THOMAS GRGEK, and award compensatory damages, consequential damages, incidental damages, costs, prejudgment interest, and other relief as this Court deems just and proper.

## COUNT V
## VIOLATIONS OF FDUPTA AGAINST GRGEK

Plaintiff adopts and incorporates paragraph numbers 1 through 91 as if fully set forth herein and further alleges:

105.    CANYON CAPITAL brings this count under Florida law against GRGEK for violations of Florida's Deceptive and Unfair Trade Practices Act ("FDUPTA").

106.    Mr. GRGEK represented to Plaintiff and the general public that that he is an experienced fiberglass repairman and "premier repair facility."

107.    In or about early February 2022, GRGEK made numerous representations to Plaintiff about his capabilities and experience as a fiberglass repairman, including, but not limited to:

    i.   AYC was a premier repair facility in Florida that handle large structural impacts and paint repairs. *See* Text Messages, <u>Exhibit "A"</u>;

    ii.   AYC had extensive experience repairing vessels manufactured by Boston Whaler;

    iii.   Defendant GRGEK's customers included other highly reputable marinas, boat dealers and vessel manufacturers; and

    iv.   Repairs to the Vessel would be completed within 90 days.

108.    GRGEK also led Plaintiff to believe that:

    a.   Defendant owned a marine travel lift depicted in photographs texted to Plaintiff;

    b.   Repairs to the Vessel would be conducted at an indoor repair facility similar to the facility depicted in photographs texted to Plaintiff;

    c.   That no other repair facility could properly fix this type of complicated repair in south Florida; and

    a.   Other repair facilities subcontract the work out to him when they have tough repairs like this.

109.    GRGEK's website (https://marineinsuranceclaim.com/) also makes the following representations which are available to consumers in Florida, including Plaintiff:

    a.  Specialist in factory work;

    b.  Largest paint both in the U.S.;

    c.  Only EPA rated facilities;

    d.  "[Y]ou won't have any out-of-pocket expenses when you work with us. In other words, you don't pay us a dime until you get your final payment from your insurance company."

    e.  That they have a "highly experienced team of engineers, surveyors, boat builders, and marine claim professionals…"

110.    Based on these representations, CANYON CAPITAL hired GRGEK to complete extensive repairs to the Vessel.

111.    Unfortunately, it turned out that the foregoing representations were false, deceptive and/or misleading under Fla. Stat. §501.204 because:

    a.  Defendant GRGEK was not a premier repair facility in Florida;

    b.  Defendant GRGEK did not have extensive experience repairing Boston Whalers;

    c.  Defendant GREGEK's customers did not include other highly reputable marinas, boat dealers and vessel manufacturers; and/or

    d.  Defendant GRGEK did not own the marine travel lift nor indoor repair facility depicted in photographs texted to Plaintiff.

    e.  Defendant GRGEK did not have a highly experienced team of boat builders, engineers, surveyors, or marine claim professionals.

112.    The representations regarding GRGEK's purported expertise in repairing vessel and conducting fiberglass repairs proved to be false, deceptive and/or misleading.

113.    Further, Defendant GRGEK's "exploratory" work over a more than three-month period proves he lacked even the most basic level of skill necessary to work on vessels.

115.    As a direct and proximate result of the false, deceptive and/or misleading representations set forth above, CANYON CAPITAL has suffered actual damages in excess of $300,000.00 which includes, but is not limited to:

     i.   The cost of repairing the Vessel which has been estimated by Foster's Yacht Services to be at least $175,000.00;

     ii.   Survey and transport expenses;

     iii.   Storage while the Vessel is disabled and undergoing repairs; expected to be at least $10,000

     iv.   Loss of use damages stemming from the inability to charter the vessel during the increased period of repair estimated to be over $35,000;

     v.   Replacement and/or remanufacturing of parts not returned by GRGEK estimated to cost over $11,800;

     vi.   Additional repairs and parts needed to repair damage caused by neglect and exposure to the elements, estimated to cost around $15,000; and

     vii.   Other incidental and consequential damages.

114.    The Plaintiff is entitled to its reasonable attorneys' fees under Fla. Stat. § 501.2105.

WHEREFORE, Plaintiff, CANYON CAPITAL VI, LLC, respectfully requests that this Honorable Court enter judgment against Defendant, ROBERT THOMAS GRGEK, and award all damages recoverable under the applicable Florida Statues including compensatory damages, consequential and incident damages, loss of use damages, attorneys' fees, costs, and other relief as this Court deems proper.

## COUNT VI
## MONEY HAD AND RECEIVED AGAINST ALL DEFENDANTS
### (Plead in the Alternative)

Plaintiff adopts and incorporates paragraph numbers 1 through 91 as if fully set forth herein and further alleges:

115.    Plaintiff brings this equitable cause of action for money had and received as an alternative basis of relief.

116.    As set forth above, Defendants precured $104,329.78 from Plaintiff through fraud, misrepresentation, undue influence and/or mistake.

117.    The Defendants have unjustly benefitted from receipt of Plaintiff's money, and equity demands that all monies be promptly returned to CANYON CAPITAL.

WHEREFORE, Plaintiff, CANYON CAPITAL VI, LLC, respectfully requests that this Honorable Court enter judgment against Defendant, ROBERT THOMAS GRGEK, and award compensatory damages, consequential damages, incidental damages, costs, prejudgment interest, and other relief as this Court deems just and proper.

Respectfully submitted this 15th day of July 2022.

By:  _/s/ Gino J. Buttó_
**F. David Famulari, Esq.**
Fla. Bar. No.: 0860506
dfamulari@NauticalLawyers.com
**Gino J. Buttó, Esq.**
Fla. Bar No.: 98462
gbutto@NauticalLawyers.com
FAMULARI & BUTTO, PLLC
2332 Galiano Street 2nd Floor
Coral Gables, FL 33134
Phone: (305) 728-7074

## <u>VERIFICATION</u>

BEFORE ME, the undersigned authority, personally appeared, **Russell Gross**, who was duly sworn and says:

1. I am a Member of Plaintiff, CANYON CAPITAL VI, LLC.

2. I have read the foregoing Verified Complaint filed in this case and I am familiar with its contents, which are true to the best of his knowledge, information, and belief.

3. I am authorized to make this representation on behalf of the Plaintiff.

FURTHER DECLARANT SAYETH NOT.

_____
**Russell Gross**

## <u>SWORN DECLARATION</u>

Pursuant to Florida Statute §92.525(41)(b)(2) and Federal Statute 28 U.S.C. §1746.  I declare under penalty of perjury under the laws of the United States that I have read the foregoing Verification and Complaint, and the facts stated in it are true and correct to the best of my knowledge and belief.

Executed on this __15th__ day of July, 2022.

_____
**Russell Gross**